UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA

IN RE:

PERFORMANCE INSULATION, INC.,                              Case No. 07-11429
     Debtor.

## ORDER REQUIRING TRUSTEE TO PRODUCE EVIDENCE OF SERVICES BEYOND TYPICAL SALES ACTIVITIES IN ORDER TO DETERMINE COMPENSATION FOR REAL ESTATE PROFESSIONAL

C. Michael Smith, attorney for the Trustee, Lynn Harwell Andrews
Jeffery J. Hartley and Christopher Conte, attorney for Thomas P. McShane
Mark Zimlich, attorney for the Bankruptcy Administrator

     The Trustee has filed an Application for Compensation of Real Estate Sales Professional. The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I), and the Court has authority to enter a final order. For the reasons indicated below, the Court determines that Jean Lankford may be compensated, for an amount yet to be determined, based on a theory of quantum meruit for services rendered that fall outside of services that would be considered normal sales activities for a brokerage agreement.

Facts

     On May 30, 2007, the debtor, Performance Insulation, Inc., filed a petition under chapter 7 of the Bankruptcy Code. A Trustee was approved to liquidate the assets of the debtor. She hired an appraiser who was paid $1,500, to evaluate the worth of the debtor's real property.

     On October 16, 2007, the Court approved the hiring of Jean Lankford and J.A. Lankford as real estate agent and broker for the debtor, Performance Insulation. The debtor's property was listed for sale at $325,000. Lankford's commission from any sale was to be 7% of the sale proceeds.

According to the broker's agreement, Lankford's commission was only to be received if and when the property was sold.

On June 26, 2007, prior to the hiring of Lankford, the Trustee filed an adversary proceeding against Master Insulation in attempt to annul a preferential transfer that occurred when Master Insulation perfected a mortgage lien against the debtor within 90 days of the debtor's bankruptcy filing. On December 3, 2007, the Trustee moved the Court to allow a proposed settlement of that adversary case. The settlement was for $325,000. The Trustee advised the Court that after speaking with Lankford, she believed the settlement amount was "reasonable and in the best interest of [the] estate." The settlement amount was equivalent to a $344,000 sale of the property (which was the average of the two appraisals done on the property), and Lankford stated she could not sell the property for this amount. At the time the settlement was reviewed by the Court, Lankford had received no offers on the property. An order to allow the compromise was signed on February 12, 2008.

Lankford marketed the debtor's property for approximately 2 months before the Trustee filed a motion to allow settlement and 2 more months while the motion to settle was pending with the Court. The motion to allow the settlement was approved on February 12, 2208 and negated the need for selling the property. The debtor's property was taken off the market and Lankford had no sale and no commission.

The Trustee now seeks compensation for Lankford for marketing the property before the settlement was reached under a quantum meruit theory. The Trustee takes the position that the compromise deprived Lankford of her commission and she should be paid for the services she rendered, "including marketing the property, contacting prospective buyers and showing the property to such prospective buyers in an attempt to negotiate a sale of the property for the benefit of the

Estate." Lankford produced no timesheets or expenses as proof of the services she provided, but states that she expended approximately 40 hours of her time marketing this property. The Trustee requests compensation for Lankford in the amount of $7,500.

The Bankruptcy Administrator objects to the compensation of Lankford based on two main arguments. First, according to the executed broker's agreement, the parties agreed that Lankford's compensation was contingent upon the sale of the property which never occurred. Second, quantum meruit is not an adequate theory under which to recover because the debtor did not receive a benefit from Lankford or her services that requires her to be paid; rather, it is the Trustee who is receiving the benefit of working with Lankford again in the future. Another creditor of the debtor, Thomas P. McShane, also objected to the compensation of Lankford and adopted the arguments of the Bankruptcy Administrator. The Court held a hearing on the motion and its objections on September 9, 2008 and took the matter under advisement.

## Law

Quantum Meruit is an equitable doctrine that is based on the theory of compensating one who confers a benefit on another in order to avoid unjust enrichment. *CIT Group/Equipment Financing, Inc. v. Roberts,* 885 So.2d 185, 189 (Ala. Civ. App. 2003). "The essential elements of recovery under this theory are: (1) valuable services were rendered; (2) the services were for the person sought to be charged; (3) these services were accepted by the person sought to be charged and were used and enjoyed by him; and (4) under such circumstances, a reasonable person would know that the person seeking compensation expected to be paid." *In re Dececco*, 234 B.R. 543, 545 (Bankr. M.D. Fla. 1999). The courts of Alabama require that the moving party show that he or she "'had a reasonable expectation of compensation for his [or her] services'" in order to be successful with an unjust enrichment claim. *CIT Group/Equipment Financing, Inc.*, 885 So.2d at 190 (quoting

*Associates Commercial Corp. v. Roberts*, 844 So.2d 1256, 1261 (Ala. Civ. App. 2002)(internal citations omitted).

A key characteristic for recovering under the theory of quantum meruit is whether or not there was a "measurable benefit" to the debtor. *In re Dececco*, 234 B.R. 543, 545 (Bankr. M.D. Fla. 1999). Where a trustee for the debtor retained a real estate broker to market and sell a shopping center and the broker did not procure a buyer for the property, the broker filed an application for compensation with the court based on the theory of quantum meruit. *Id.* He requested $83,000 for approximately 415 hours he spent marketing the property at a rate of $200 an hour, $13,000 in actual expenses, and $10,000 in attorney's fees. The broker argued that, although the property was not sold, his efforts induced increasing bids on the property. The court decided it could not quantify this benefit and awarded the broker reimbursement for his actual costs and "a minimal amount" ($10,000) for his work. *Id.*

In *In re Sergio, Inc.*, 39 B.R. 522 (Bankr. D. Hawaii 1984), a bankruptcy court allowed compensation to a broker based on the doctrine of quantum meruit after the broker submitted timesheets supporting the 320 hours he spent marketing the property. The broker corresponded with more than 50 purchasers, approximately 35 potential purchasers were sent informational packets prepared by the broker, the property was shown approximately 35 times, and the broker traveled to promote the property. Although the ultimate buyer of the property was not produced by the broker, the broker continued to assist the trustee by acting as a "consultant" to the parties by answering questions involving the inventory, liquor licensing, and he continued to solicit alternative offers while the negotiations were taking place. The court concluded that the broker "expended considerable time and effort in marketing the property and that he did assist in the sale," even if he did not produce the buyer. 39 B.R. at 524-25. The court concluded that the broker's 10%

commission was too high, but he deserved "reasonable compensation" for his services. *Id.* at 525. The court determined the broker should not be compensated based on specific time and a specific rate; rather, the court found that "payment of 3% commission to [the broker was] reasonable under the circumstances presented [], taking into consideration the risk factor inherent in any listing agreement." *Id.*

In another case, where a broker was hired to procure leases for and help develop a shopping center, the broker was allowed to recover under the theory of quantum meruit for her consulting services after the court deemed she could not collect her commission because she was not a "broker" under state law. *In re Mickler*, 58 B.R. 270 (Bankr. M.D. Fla. 1986). In *Mickler*, the real estate agent was hired to secure leases for a shopping center development. She had a reputation of having many business connections, and the debtor knew her networking abilities would be beneficial to him in developing the shopping center. Her commission agreement was conditioned upon the ability of the debtor and tenants to obtain financing. Beyond the typical marketing of the property, she did consulting work that included obtaining zoning, easements, and a liquor license for the property. She spent between 3,500 and 4,000 hours negotiating and obtaining lease agreements from several retailers and lining up other possible tenants. When financing fell through and the real estate agent demanded her commission for work completed, the debtor refused to pay her. She insisted that she had earned $75 an hour working on similar leases in the past and should be paid that amount for her work since the acts of the debtor had prevented or rendered her performance impossible.

In analyzing the dispute, the *Mickler* court determined that the agent was not acting as a "broker" as defined by state law at the time in question; rather, she was a salesperson and, therefore, not allowed to recover her contracted commission. The court noted that "[t]here [was] convincing evidence in [the] record to warrant the conclusion that the Commission Agreement would properly

be classified as an 'at risk' contract, or one in which the broker took the risk that the shopping center would never be constructed and, if no leasable premises ever came into existence, no commission would be earned." *Mickler*, 58 B.R. at 276. The court did conclude, however, that the "broker" performed many consulting services that were beyond the scope of a broker or salesperson. The court further determined that the debtor was aware that the broker was to perform such consulting services and he "knowingly and willingly accepted the benefits," and "it would be grossly unfair and inequitable to deny [the broker] compensation completely." *Id.* at 278. The broker was awarded, on a quantum meruit basis, $25,000 for her consultant services.

In order to recover under a theory of unjust enrichment, such as quantum meruit, Lankford and/or the Trustee must prove: "(1) valuable services were rendered; (2) the services were for the person sought to be charged; (3) these services were accepted by the person sought to be charged and were used and enjoyed by him; and (4) under such circumstances, a reasonable person would know that the person seeking compensation expected to be paid." *In re Dececco*, 234 B.R. 543, 545 (Bankr. M.D. Fla. 1999). The first two prongs are obviously met, the chapter 7 Trustee hired Lankford to sell the debtor's property. However, the last two elements are not as clear.

The parties contracted that Lankford would have one purpose; she would market the property for sale and, if she sold the property, she would receive a 7% commission. Lankford did render her services, but Lankford never produced a buyer. Without a buyer, it is difficult for the Court to identify the exact service for which Lankford seeks compensation. Furthermore, no timesheets or documents reflecting any services rendered or expenses were ever produced to the Court to explain Lankford's reported 40 hours of work. Without this evidence, it is impossible for the court to know what benefit Lankford bestowed on the debtor's estate since she did not sell the property.

6

Case 07-11429    Doc 190    Filed 09/22/08    Entered 09/22/08 11:51:45    Desc Main
Document      Page 6 of 8

The Trustee notes that Lankford benefitted the estate by helping it to capture the greatest amount of funds possible. The Trustee contends that when the settlement amount was being negotiated, Lankford gave her professional opinion regarding her inability to secure a sale above the adversary settlement amount and this propelled the Trustee to accept the settlement and forgo selling the property.

However, the last element that must be proven to recover for unjust enrichment under the theory of quantum meruit is would a reasonable person, under these circumstances, know that a broker expected to be paid? *In re Dececco*, 234 B.R. 543, 545 (Bankr. M.D. Fla. 1999). Or, as Alabama requires, has the moving party shown that she had a reasonable expectation of compensation for her services? In this case, the parties had a contract. In fact, they had a very standard contract that specified that Lankford would be paid if she produced a buyer.[1] This agreement does not appear to suggest that either party thought compensation would be paid without a buyer being produced. However, the contract would not cover acts done by Lankford that were beyond her normal scope of duties that the debtor's estate accepted and from which it benefitted.

Therefore, based on case law and equity, there is an opportunity for Lankford to recover for "consulting" services or work done outside of the scope of a normal listing agreement, but not her ordinary sales activities for which she contracted. In order for the Court to determine the amount of any such compensation in this case, further evidence from the Trustee of the services rendered by Lankford is needed.

---

[1] The listing agreement was not produced. The Court is writing based on the written motions of the parties and their oral arguments.

IT IS ORDERED that the Trustee produce evidence of any consulting services or services outside the scope of those typically associated with a real estate agent with a standard listing agreement. A continued hearing on the matter is set on October 21, 2008 at 8:00 A.M.

Dated: September 22, 2008

/s/ Margaret A. Mahoney
MARGARET A. MAHONEY
U.S. BANKRUPTCY JUDGE